USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 09/28/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
MICHAEL E. JONES. M.D., P.C., *doing business as Lexington Plastic Surgeons*,

                        Plaintiff,

           -against-

UNITEDHEALTH GROUP, INC.; UNITED HEALTHCARE SERVICES, INC.; OPTUM GROUP, LLC,

                        Defendants.
------------------------------------------------------------- X

19-CV-7972 (VEC)

ORDER

VALERIE CAPRONI, United States District Judge:

Michael E. Jones, M.D., P.C., d/b/a Lexington Plastic Surgeons, LLC ("Plaintiff"), accuses health insurance companies UnitedHealth Group, Inc., United Healthcare Services, Inc., and Optum Group, LLC (collectively "Defendants") of intentionally denying or delaying payment of claims submitted by Plaintiff because he is an out-of-network medical provider. The Court granted Defendants' first motion to dismiss but granted Plaintiff leave to amend his Employee Retirement Income Security Act of 1974 ("ERISA"), federal antitrust, and common law breach of contract claims, *see Jones v. UnitedHealth Grp., Inc.*, No. 19-CV-7972, 2020 WL 4895675 (S.D.N.Y. Aug. 19, 2020). Plaintiff filed a first amended complaint ("FAC"), and Defendants again moved to dismiss. Because the FAC does not state a claim, Defendants' motion to dismiss is GRANTED. This case is DISMISSED with prejudice.

## BACKGROUND

The Court assumes familiarity with the Court's prior opinion and will not recount the full background of this matter. *See generally Jones*, 2020 WL 4895675, at *1–2 (providing a

detailed overview of Plaintiff's allegations).  The Court will summarize only the facts most pertinent to Defendants' motion to dismiss the FAC.

Plaintiff's original complaint alleged that Defendants' disparate treatment of out-of-network providers violates ERISA, federal antitrust laws, and related state laws.  *See* Compl., Dkt. 1.  The Court dismissed Plaintiff's ERISA claims because Plaintiff had failed to plead facts from which the Court could infer "the plan term(s) that Defendants allegedly violated, valid assignment(s) of benefits by Plaintiff's patient(s), and either an intent to proceed in a representative capacity or facts that plausibly show the inapplicability of the representative requirement."  *Jones*, 2020 WL 4895675, at *5.  The Court granted Plaintiff leave to amend his ERISA claims to cure those deficiencies.

The Court dismissed Plaintiff's state law claims because they were preempted by ERISA.  *See id.* (citing 29 U.S.C. § 1144).[1]  Although the state law claims related to the ERISA plans were dismissed with prejudice, the Court found that, to the extent "Plaintiff seeks to enforce prior settlement agreements entered into with Defendants, [he] may be able to plead a breach of contract that is separate from any alleged violation of plan terms or ERISA."  *Id.* at *7 (internal citation omitted).  Accordingly, the Court granted Plaintiff leave to amend his breach of contract claim "based on Defendants' refusal to make payments pursuant to the parties' settlement agreements."  *Id.*

The Court also dismissed Plaintiff's antitrust claims, concluding that Plaintiff had "failed to plead that Defendants possess monopoly power, have a specific intent to monopolize, or have

---

[1]     The original complaint included state law claims alleging violations of the New York Prompt Pay Act, breach of contract, unjust enrichment, breach of the implied covenant of good faith and fair dealing, and tortious interference.  *See* Compl., Dkt. 1 ¶¶ 65–99.  The Court found that even if Plaintiff's New York Prompt Pay Act claim was not preempted, Plaintiff had failed to state a claim for relief under that statute.  *See Jones v. UnitedHealth Grp., Inc.*, No. 19-CV-7972, 2020 WL 4895675, at *6 (S.D.N.Y. Aug. 19, 2020).

conspired to monopolize the health insurance market." *Id.* at *11.  The Court granted Plaintiff leave to amend those claims, despite doubts "that Plaintiff will be able to plead sufficient facts to support an antitrust injury or an inference of monopoly power, given Defendants' less than 20% share of the alleged relevant market."  *Id.*

On September 11, 2020, Plaintiff filed his first amended complaint.  FAC, Dkt. 41.  Defendants moved to dismiss the FAC for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Notice of Mot., Dkt. 45.  Plaintiff opposed the motion.  Resp., Dkt. 48.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief."  *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).  A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "[F]actual content that is 'merely consistent with,' rather than suggestive of, a finding of liability will not support a reasonable inference."  *New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 709 F.3d 109, 121 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  "[T]o survive a motion under Rule 12(b)(6), a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level."  *Keiler v. Harlequin Enters., Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted).

When considering a Rule 12(b)(6) motion to dismiss, the Court draws all reasonable inferences in the light most favorable to the plaintiff.  *See Gibbons v. Malone*, 703 F.3d 595, 599

(2d Cir. 2013) (citation omitted).  But even though courts are required to accept all of the factual allegations in the complaint as true, courts "'are not bound to accept as true a legal conclusion couched as a factual allegation,'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555), and courts are not required to credit "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (citation omitted); *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (giving "no effect to legal conclusions couched as factual allegations").

## DISCUSSION

In its prior opinion, the Court provided Plaintiff with a detailed explanation of what Plaintiff needed to allege in order to state claims for relief that would survive a 12(b)(6) motion to dismiss.  *See generally Jones*, 2020 WL 4895675.  Despite Plaintiff's assertions that this is a "straightforward lawsuit," *see* FAC ¶ 1; Resp. at 2, and that he has "surely" and "easily" met the Rule 8 pleading standard, *see* Resp. at 3, 4, Plaintiff filed an FAC that is substantially similar to the original complaint and that fails to rectify the deficiencies previously identified by the Court.  The Court will not repeat its prior opinion, including its detailed review of the elements of each cause of action or its explanation why Plaintiff's original complaint failed to state any claim for relief.  Instead, the Court will limit its discussion to the few new allegations in the FAC and to why those new allegations fail to cure the previously-identified deficiencies.

I.     **ERISA Claims**

The only private litigants who are permitted to bring civil enforcement actions under ERISA are plan participants, beneficiaries, or fiduciaries, although a "narrow exception" exists for "healthcare providers to whom a beneficiary has assigned his claim in exchange for health care benefits." *Jones*, 2020 WL 4895675, at *4 (internal citations omitted).  In its prior opinion, the Court dismissed Plaintiff's ERISA claims because the complaint included no well pled allegations as to the "actual terms of Plaintiff's assignment agreement," even though "the agreement is readily available to Plaintiff."  *Id*.  In the FAC, Plaintiff retained the allegation that he requires "every patient" to "sign a form which provides for the assignment of insurance benefits and rights by the insurance customers to the Plaintiff."  *See* FAC ¶ 45; *see also* Compl. ¶ 15 (using almost verbatim language).  But Plaintiff still did not attach the form he supposedly has every patient sign, nor did he provide any additional details about the terms of the assignments.[2]

On this subject, the only new allegations in the FAC are conclusory allegations that (i) requiring patients to assign their insurance benefits to their medical providers "is a medical industry norm," FAC ¶ 46, and (ii) "Plaintiff is a defined beneficiary under the patient/insurance customer's plans," *id*. ¶ 95.  But those allegations do nothing to allow the Court to infer the terms of the assignments, "leaving the Court with only Plaintiff's bare legal conclusion as to the validity and effect of any assignment agreement that may have been signed." *Jones*, 2020 WL

---

[2]     In dismissing Plaintiff's ERISA claims the first time, the Court found that the complaint did not "identify a single patient, even anonymously, who executed an assignment agreement and received medical services in exchange, and as to whom Defendants refused or delayed payment." *Jones*, 2020 WL 4895675, at *4.  In the FAC, Plaintiff provides 17 examples of patients who he allegedly treated and who were purportedly insured by Defendants.  FAC ¶¶ 57, 65.  As to six of them, Plaintiff alleges that Defendants delayed payment and ultimately paid, on average, a smaller percentage of the claim than Defendants paid, on average, in prior years. *Id*. ¶¶ 65–68. But none of those allegations includes any facts about those patients' assignment of their rights to Plaintiff, beyond the conclusory allegation that all patients assign their insurance benefits to Plaintiff.

4895675, at *4.[3] Accordingly, for the reasons discussed in the prior opinion, Plaintiff's failure to plead the actual terms of the assignments necessitates dismissal of Plaintiff's ERISA claims.[4]

But even if Plaintiff had pled adequately that he held valid assignments of his patients' claims, he did not add any factual allegations to the FAC to cure the remaining deficiencies previously identified by the Court. Those deficiencies include:

- Failure to plead the terms of the ERISA plans at issue. *Id.* at *3, *3 n.5 (noting that Plaintiff could have attached, excerpted, or summarized publicly available documents with plan terms, that the complaint failed to disclose which plans are at issue, and that Plaintiff's conclusory allegations that Defendants have a number of obligations is insufficient to state a claim).

- Failure to plead that Defendants breached the terms of the ERISA plans. *Id.* at *4 (finding that Plaintiff did not state a claim that Defendants discriminated against out-of-network providers because he failed to allege adequately that whatever plan was allegedly breached prohibits discrimination against out-of-network providers, "ha[d] not identified a single similarly situated, in-network provider that received better treatment," nor had he "identified even one other out-of-network provider that had been subjected to the same treatment as Plaintiff"); *id.* (holding that Plaintiff's allegation that Defendants' adverse determinations of his claims were pretextual was conclusory).

---

[3] The FAC, like the original complaint, has no factual allegations that would allow the Court to infer that the assignments were "consistent with the terms of the ERISA plans at issue, which could contain an anti-assignment provision or restrictions on the form of any permissible assignment." *Jones*, 2020 WL 4895675, at *4 (citations omitted).

[4] Plaintiff's failure to attach a copy of his form assignment is puzzling. He alleges that he has every patient sign one, so presumably he knows exactly what the assignment says and easily could have attached a blank version as an exhibit to the FAC.

- Failure to plead, as to his ERISA breach of fiduciary duty claim, either that he is seeking relief on a representative basis or that the representative capacity requirement does not apply to the plans at issue. *Id.* at *5.[5]

In short, Plaintiff's ERISA claims require him to plead, at a bare minimum, that he holds a valid assignment of his patients' rights, the specific terms of the ERISA plans at issue, and that Defendants breached those terms. Because the FAC, just like the original complaint, does not plead facts from which the Court could infer that Plaintiff's patients validly assigned him their rights, the terms of the plans, or the alleged breach of those terms, the ERISA claims are dismissed with prejudice.

## II.     Breach of Contract

In its prior opinion, the Court granted Plaintiff leave to amend one aspect of his breach of contract claim. In his original complaint, Plaintiff alleged that Defendants breached the terms of the insurance plans when they failed "to properly administer, process or pay the Subject Claims in the manner and amounts required" under those plans. Compl. ¶ 74. The Court found that breach of contract claim was expressly preempted by ERISA and dismissed that claim with prejudice. *Jones*, 2020 WL 4895675, at *7, 12. But in the original complaint, Plaintiff also made the conclusory allegation that Defendants "would reject or otherwise fail to fund previously agreed upon settlement agreements." Compl. ¶ 26(A). Because a settlement agreement could "create a duty separate from any plan obligations," *Jones*, 2020 WL 4895675, at *7, a breach of contract claim based on a breached settlement agreement would not be preempted by ERISA. Accordingly, the Court granted the motion to dismiss that claim with

---

[5] The portion of Plaintiff's opposition brief discussing his breach of fiduciary duty claim is word-for-word the same as the same portion of his brief opposing Defendants' first motion to dismiss; Plaintiff did not even bother to update the citations from the complaint to the FAC. *Compare* Resp. at 8–10 *with* Orig. Resp., Dkt. 34 at 6–8.

leave to amend. Although Plaintiff had not provided the terms of *any* settlement agreement that he claimed had been breached, *id.*, those facts could be added in an amended complaint.

In blatant disregard of the Court's prior ruling, the FAC again alleges breach of contract based on alleged breaches of his patients' insurance plans, using almost verbatim the language from the original complaint. *Compare* FAC ¶¶ 136–144 *with* Compl. ¶¶ 70–76. Additionally, although the FAC includes the same conclusory allegations about breached settlement agreements, *compare* FAC ¶¶ 71–73 *with* Compl. ¶ 26(A), it includes no factual allegations about the terms of those settlement agreements.[6] Accordingly, for the reasons outlined in the prior opinion, Plaintiff's breach of contract claim is dismissed with prejudice.

### III.   Antitrust Claims

The Court granted Defendants' motion to dismiss the antitrust claims in Plaintiff's original complaint because Plaintiff had failed to plead facts from which the Court could infer an antitrust injury or the existence of monopoly power, among many other deficiencies. *Jones*, 2020 WL 4895675, at *7–11. With respect to antitrust injury, Plaintiff opted to double down on the theory of injury previously rejected by the Court: by withholding payments due to out-of-network providers, Defendants are attempting to force Plaintiff "and likely other similarly situated providers" to become part of Defendants' network of providers. FAC ¶ 11. That, he asserts, is an antitrust injury because forcing providers to join Defendants' network encourages

---

[6]   As with the failure to include the terms of the assignment agreements pursuant to which he purports to sue, Plaintiff's failure to include the terms of allegedly breached settlement agreements is puzzling. Although he must be privy to the terms of settlement agreements he allegedly reached with Defendants, the FAC includes not a single factual allegation about the terms of those alleged agreements.

people to purchase health insurance from Defendants, allowing Defendants to acquire a larger share of the health insurance market. *Id.* ¶¶ 126–130.[7]

Plaintiff has utterly failed to address the fatal flaw that the Court identified in his initial complaint: there are no allegations in the FAC that competition in the insurance market — which is the allegedly monopolized market — has been affected by Defendants' actions vis-à-vis Plaintiff's claims for reimbursement. Plaintiff has not alleged that medical providers have joined Defendants' network because of the purported discrimination against out-of-network providers or that Defendants' share of the health insurance market has increased since 2019, the year the supposed discrimination began. *See Jones*, 2020 WL 4895675, at *8. The FAC does include some new statistics about Defendants' share of the health insurance market generally, *see* FAC ¶¶ 21–29, but none of the numbers allows a comparison of Defendants' market share before and after 2019.[8]

Moreover, the FAC continues Plaintiff's silence on whether medical providers may join more than one insurance network. As the Court understands Plaintiff's logic, he asserts that Defendants are discriminating against out-of-network providers to induce or coerce them to join Defendants' network; with more providers in the network, consumers will flock to buy

---

[7] The FAC also retains allegations (without adding any new ones) pertaining to an alternative theory of antitrust injury, namely that Defendants' supposed discriminatory scheme discourages out-of-network providers from treating patients insured by Defendants, which reduces competition for Defendants' in-network providers. *Compare* FAC ¶ 128(b) *with* Compl. ¶ 27(b). But just as the Court explained in its prior opinion, any effect on the healthcare (as opposed to health insurance) market is irrelevant; Plaintiff is accusing *Defendants* of violating the antitrust laws, and "Defendants cannot monopolize a market in which they do not compete." *Jones*, 2020 WL 4895675, at *8 n.11.

[8] Only two of the statistics are moored to particular time periods. *See* FAC ¶ 22 (noting that UHG had a membership base of 50 million Americans in 2018); *id.* ¶ 29 (noting that UHG's cashflow in the first fiscal quarter of 2020 was $2.9 billion). With no way to compare membership base to cashflow, the statistics are completely unhelpful in determining whether Defendants' share of the health insurance market increased after it purportedly began discriminating against out-of-network providers.

9

Defendants' insurance, thereby increasing Defendants' market share of the health insurance market.  The soft underbelly of that argument, of course, is that it only works logically if medical providers can only join one insurance network.  That premise does not, of course, jibe with common experience; with no facts in the FAC on this point, the Court cannot plausibly infer that Defendants' purported discrimination against Plaintiff or others like Plaintiff has increased or is likely to increase Defendants' share of the insurance market.  *Jones*, 2020 WL 4895675, at *8.[9]  With no facts from which the Court can infer an antitrust injury, Plaintiff has again failed to plead an antitrust claim.

      Even if Plaintiff had adequately alleged the existence of an antitrust injury, Plaintiff has failed to state a claim that Defendants monopolized, attempted to monopolize, or conspired to monopolize the health insurance market.  With respect to actual monopolization, even assuming that the purported discrimination against out-of-network providers constituted anticompetitive conduct (which, for the reasons discussed above, it does not), Plaintiff has not pled facts from which the Court can infer that such discrimination existed.  Although a close call, the Court will assume that the new allegations in the FAC support an inference that Plaintiff was subject to a change in policy in or around January 2019 that led to an average increase in claims' processing times and an average decrease in the percentage of each claim paid.  *See* FAC ¶¶ 56–67.  But those additional allegations provide no facts from which the Court could infer that Plaintiff was targeted *because* he is an out-of-network provider.  Accordingly, even if the Court were to accept that Defendants changed their practices towards Plaintiff in the beginning of 2019, there are still

---

[9]    Not only is the FAC silent as to those deficiencies, Plaintiff also did not address them in his opposition brief.  The portion of Plaintiff's brief on this point is word-for-word identical to his prior brief; Plaintiff did not even bother to update the citations from the complaint to the FAC.  *Compare* Resp. at 13–19 *with* Original Resp. at 19–25.

no well pled allegations that Plaintiff was discriminated against.[10] In short, with no facts from which the Court can infer that Defendants engaged anti-competitive conduct, Plaintiff's antitrust claims must be dismissed.

The FAC is also devoid of facts from which the Court could infer that Defendants possessed monopoly power. Just as in the original complaint, the FAC is long on "vague and non-committal invocations of antitrust buzzwords," which the Court previously rejected as insufficient to state an entitlement to relief. *Jones*, 2020 WL 4895675, at *7. *See, e.g.*, FAC ¶ 2 ("These abusive and injurious payment practices could not have occurred absent the UnitedHealth Defendants monopolistic power in New York and New York City."); *id.* ¶ 10 ("In or around the beginning of January 2019, the UnitedHealth Defendants (now with Optum as part of the consortium) began using their dominant market power to delay or wholly deny legitimate payments to Plaintiff for medically necessary services Plaintiff provided to UnitedHealth Defendants' customers."); *id.* ¶ 66 ("[T]he UnitedHealth Defendants decided to use their massive market power to abuse Plaintiff and likely any out-of-network providers like plaintiff."). Those types of allegations remain conclusory, and the Court continues to disregard them.

Additionally, just like the original complaint, the FAC does not include allegations that Defendants increased their market share after the supposed discrimination began in 2019. Although the FAC alleges different market shares than were alleged in the original complaint — Plaintiff now alleges that Defendants have a 14% share of the health insurance market nationally

---

[10] Like the original complaint, the FAC contains no factual allegations (*e.g.*, facts regarding similarly situated providers who were subject to the same "mistreatment" as Plaintiff post-2019 or any in-network comparators who were not "mistreated") from which the Court can infer that the Plaintiff was treated differently than others. *Jones*, 2020 WL 4895675, at *9.

and a 29% market share in New York City, *see id.* ¶¶ 21, 25[11] — those market shares remain "far short of even a 50% market share." *Jones*, 2020 WL 4895675, at *10. Accordingly, because the FAC does not "contain exceptionally strong allegations as to other market characteristics that could support a plausible inference of monopoly power," *see id.*, Plaintiff's allegations fail to state a claim of actual monopolization.

Plaintiff did not add a single new allegation to address the many deficiencies previously identified in Plaintiff's claims of attempted monopolization and conspiracy to monopolize. Those deficiencies include:

- Failure to plead facts from which the Court could infer the contours of the relevant market. *See id.* at *10 n.13.

- Failure to plead facts from which the Court could infer Defendants' specific intent to monopolize. *Id.* at *11; *compare* FAC ¶ 128 *with* Compl. ¶ 58.

- Failure to plead the time, places, or persons involved in the alleged conspiracy to monopolize. *Jones*, 2020 WL 4895675, at *11; *compare* FAC ¶ 30 *with* Compl. ¶ 27.

In short, Plaintiff has failed to address — let alone cure — any of the deficiencies in his antitrust claims. Accordingly, those claims are dismissed with prejudice.

## CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss is GRANTED. Because Plaintiff has already had the opportunity to amend his complaint and because he has not sought

---

[11] Although the FAC alleges that Defendants' market share is 14% nationally and 29% in New York City, *see* FAC ¶¶ 21, 25, Plaintiff's opposition brief cites to the 13% national market share and 16% New York City market share that were alleged in the original complaint, *see* Resp. at 17 (citing Compl. ¶ 9). Plaintiff's counsel's rampant copying and pasting from his prior opposition brief, without even bothering to update his citations to the operative complaint, can only be characterized as exceedingly sloppy lawyering.

permission to amend again if the Court dismisses the FAC, Plaintiff's complaint is DISMISSED with prejudice.

The Clerk of Court is respectfully directed to terminate all open motions and to close this case.

**SO ORDERED.**

Date: September 28, 2021
New York, New York

_____
**VALERIE CAPRONI**
**United States District Judge**